IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| SHAILA HOSSAIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | EP-15-CV-00083-KC |
| JOHN H. MCHUGH, | § | |
| SECRETARY OF THE ARMY, | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day, the Court considered Defendant's Motion to Dismiss, ECF No. 9, in the above-captioned case. For the reasons stated below, the Court **GRANTS** Defendant's Motion.

## I.     BACKGROUND

This case arises out of Plaintiff's employment with the Department of Veteran Affairs and William Beaumont Army Medical Center ("WBAMC") as a resident physician for the Internal Medicine Residency Program. Compl. ¶ 7, ECF No. 1. Beginning on July 1, 2009, Plaintiff began her residency with WBAMC. Compl. ¶ 8. Plaintiff, a female who was born in Bangladesh, alleges that she "was treated dissimilarly from other residents in the Internal Medicine Residency Program at WBAMC based on her national origin and sex." Compl. ¶ 43. Plaintiff cites several instances where her superiors at WBAMC took action against her and alleges that these actions were taken due to her national origin and sex. Compl. ¶¶ 10-45.

On September 8, 2009, Dr. Michael Cole, the program director for the Internal Medicine Residency Program, stated in Plaintiff's first-quarter evaluation that Plaintiff had demonstrated "several deficiencies . . . particularly with competing [sic] and following up on tasks, finishing notes in a timely fashion, and oral presentation on records." Compl. ¶ 10. After that evaluation,

on September 16, 2009, Dr. Cole recommended that Plaintiff be placed on Program Level Remediation ("PLR"); and, Plaintiff was placed on PLR from October 2009 to January 2010. Compl. ¶¶ 11-12.  During the week of January 4-8, 2010, the Graduate Medical Education Committee ("GMEC") extended Plaintiff's PLR by ninety days, at Dr. Cole's recommendation. Compl. ¶ 15.

In February 2010, Plaintiff asked Dr. Cole for a letter of recommendation necessary for her application to a residency program at a different hospital.  Compl. ¶ 16.  Dr. Cole refused to write a recommendation or reference letter for Plaintiff, first stating and later shouting that he could not say anything good about Plaintiff.  Compl. ¶¶ 16-17.  Dr. Cole also threatened to put Plaintiff on probation when she asked for the reference letter. Compl. ¶ 17.

Sometime in February or March of 2010, Dr. Cole recommended to the GMEC that Plaintiff be placed on probation and that her first year of residency be extended by three academic blocks.  Compl. ¶ 19.  Plaintiff was placed on a ninety-day probationary period beginning on April 14, 2010, and her first year of training was extended by three academic blocks, making Plaintiff unable to accept a position at another hospital.  Compl. ¶¶ 19-20, 23.

On April 1, 2010, Dr. Cole sent an email to Dr. George Imuro ("2010 Email"), an attending physician, requesting that Dr. Imuro lower the grade that he had given Plaintiff in "medical knowledge," one of the categories on Dr. Imuro's evaluation of Plaintiff's performance.  Compl. ¶¶ 21-22.  Dr. Imuro replied to this email, refusing to lower Plaintiff's grade.  Compl. ¶ 22.

When Dr. Cole learned that Plaintiff had decided to wait until August 2011 to take the United States Medical Licensing Examination Step 3 rather than take the exam in July 2011, Dr. Cole screamed at Plaintiff and threatened to recommend probation to the GMEC.  Compl. ¶ 31.

On August 10, 2011, Plaintiff was placed on probation for ninety days at the recommendation of Dr. Cole. Compl. ¶¶ 33, 37. According to Plaintiff, other residents who were "outside of Plaintiff's protected status (national origin and sex) had less favorable evaluations, [and] failed the Step 3 Exam . . . [yet] were not placed on probation." Compl. ¶ 35.

Sometime during the course of Plaintiff's employment at WBAMC, Dr. Cole "alleged Plaintiff had a learning disability" in a conversation with Plaintiff and Dr. Christine Sharkey, and again in a GMEC meeting. Compl. ¶ 36. Dr. Cole also made comments about Plaintiff's English proficiency and accent. Compl. ¶ 36.

On December 5, 2011, Dr. Sharkey informed Plaintiff that Plaintiff could resign or be terminated and "assured Plaintiff that if she resigned she would receive two years credit for her residency." Compl. ¶ 39. On January 10, 2012, Plaintiff resigned. Compl. ¶ 39. Upon Plaintiff's resignation, she was replaced by someone outside of her protected class. Compl. ¶ 44.

On January 17, 2012, Dr. Sharkey noted in a memorandum ("2012 Memorandum") that Plaintiff "has SATISFACTORILY completed her [first year of residency]. But that she receives a MARGINAL for her [second year of residency]. This is a recognized evaluation by the ABIM."[1] Compl. ¶ 40. However, other residents "had less favorable evaluations, longer probationary periods, and were not reported to the ABIM as marginal." Compl. ¶¶ 27-28. These other residents were "outside of Plaintiff's protected status (national origin and sex)." Compl. ¶ 28. Over a year after Plaintiff's resignation, on January 20, 2013, Dr. Cole wrote a reference

---

[1] "ABIM" is an acronym for the American Board of Internal Medicine. *See* American Board of Internal Medicine, http://www.abim.org (last visited October 26, 2015).

letter ("2013 Letter")[2] in which he rated Plaintiff's performance as marginal for sixteen months, Compl. ¶ 42.

Plaintiff first contacted the Army Equal Employment Opportunity ("EEO") office regarding the allegedly discriminatory events at WBAMC on February 26, 2013.[3]  EEO Compl., Mot. to Dismiss Ex. 1, at 2, ECF No. 9-1.[4]  Plaintiff filed her Formal Complaint of Discrimination ("EEO Complaint") on April 24, 2013.  EEO Compl. 3.

On March 20, 2015, Plaintiff filed her Original Complaint with this Court, alleging violations of Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, including claims of disparate treatment and hostile work environment.  Compl. ¶¶ 1, 46-52.  In the Complaint, Plaintiff also alleges that Defendant is liable for common law fraud.  Compl. ¶¶ 53-54.

---

[2] In the Response, Plaintiff notes that she erroneously stated the date of the 2013 Letter as January 20, 2013, in the Complaint and explains that the correct date is January 30, 2013.  Resp. 4, n.3.  In the Reply, Defendant relies on the original date—January 20, 2013.  Reply 2.  For this Order, the Court relies on the date set out in the Complaint—January 20, 2013—because, generally, the Court is limited to the contents of the pleadings in considering a motion to dismiss.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)).  Further, whether the 2013 Letter was written on January 20 or January 30 does not affect the outcome of the case.

[3] Generally, "[i]n considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto."  *Collins*, 224 F.3d at 498 (citing Fed. R. Civ. P. 12(b)(6)).  However, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record."  *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citations omitted).  *See also King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011) ("Even though the EEOC charge is a matter outside the pleading, judicial notice of it may be taken as a matter of public record when deciding a Rule 12(b)(6) motion, especially since its authenticity is uncontested.").  Because the EEO Complaint is a matter of public record, the Court may consider it in deciding the 12(b)(6) motion.  *See Cinel*, 15 F.3d at 1343 n.6; *King*, 809 F. Supp. 2d at 579 n.1.  In addition to the EEO Complaint being a matter of public record, Plaintiff has not objected to the use of this document in deciding the motion to dismiss nor has Plaintiff contested its validity; in fact, Plaintiff seeks to rely on this document in her Response.  *See* Resp. 5 (citing "ECF No. 9-1," the EEO Complaint, in asserting that "[a]ll of the allegations set forth in Hossain's complaint letter, as well as the factual allegations in her Complaint, were accepted [as] issues and investigated by the EEO").  Thus, the Court refers to the EEO Complaint, ECF No. 9-1, in deciding the motion to dismiss.  *See Cinel*, 15 F.3d at 1343 n.6; *King*, 809 F. Supp. 2d at 579 n.1.  Moreover, the Court considers the EEO Complaint only to determine the date on which Plaintiff first contacted the Army EEO office.

[4] The numbering of the EEO Complaint begins with page two, thus making the numbering inconsistent with the numbering provided by the Court's electronic docketing system.  Therefore, for clarity in citing the EEO Complaint, the Court cites to the page numbers provided by the Court's electronic docketing system.

On May 26, 2015, Defendant filed the Motion to Dismiss.  *See* Mot. to Dismiss.  On June 9, 2015, Plaintiff responded to the Motion.  *See* Resp.  After the Court granted leave to file out of time, Defendant replied to Plaintiff's Response on June 25, 2015.  *See* Reply, ECF No. 17.

## II.   DISCUSSION

### A.      Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true and view them in a light most favorable to the plaintiff.  *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Though a complaint need not contain "detailed factual allegations," a plaintiff's complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555*; see also Colony Ins. Co.*, 647 F.3d at 252.  Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (internal citation omitted); *see also Colony Ins. Co.*, 647 F.3d at 252 ("Factual allegations must be sufficient to raise a non-speculative right to relief.").  Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge

that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"

*Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**B.      Plaintiff's Causes of Action**

The Court first addresses Plaintiff's Title VII claims of disparate treatment and hostile

work environment, and then proceeds to consider Plaintiff's common law fraud claim.  Finally,

the Court addresses Plaintiff's request for leave to amend her complaint.

**1.      Disparate treatment**

Plaintiff's first theory of recovery, disparate treatment, involves claims of discrete

discriminatory acts in which Plaintiff was allegedly treated less favorably than "other residents

outside of Plaintiff's protected status."  Compl. ¶¶ 28, 35.  Plaintiff alleges that her employer,

WBAMC, committed a number of discrete acts of discrimination.  Compl. ¶¶ 10-45.  First,

Plaintiff states that WBAMC placed Plaintiff on Program Level Remediation once and on

probation twice, and that for one of these probationary periods, other residents who were

performing at a lower level than she was performing were not placed on probation.  Compl. ¶¶

12, 23, 35, 37.  Second, Plaintiff alleges that Dr. Cole, an employee of WBAMC, denied Plaintiff

a letter of recommendation.  Compl. ¶¶ 16-17.  Third, Plaintiff alleges that Dr. Cole sent the

2010 Email to Dr. Imuro asking him to lower Plaintiff's grade in "medical knowledge."  Compl.

¶¶ 21-22.  Fourth, Plaintiff claims that Dr. Cole stated that Plaintiff had a learning deficiency and

made comments about Plaintiff's English proficiency and accent.  Compl. ¶ 36.  Fifth, Plaintiff

claims that on December 5, 2011, Dr. Sharkey, an employee of WBAMC, asked Plaintiff to

resign in lieu of termination and told Plaintiff that if she resigned she would receive two years

credit for her residency.  Compl. ¶ 39.  Plaintiff states that the 2012 Memorandum confirms that

Plaintiff would receive a satisfactory rating for her first year of residency and a marginal rating

for her second year.  Compl. ¶¶ 39-40.  However, in Plaintiff's final claim of discrimination,
Plaintiff asserts that over one year after her resignation, Dr. Cole wrote the 2013 Letter that rated
Plaintiff as marginal for sixteen months of residency, rather than for one year.  Compl. ¶ 42.

### a.    Exhaustion requirement

In the Motion, Defendant argues that the Plaintiff's disparate treatment claims should be
dismissed because Plaintiff has failed to exhaust her administrative remedies.  Mot. to Dismiss 7-
10.  Defendant argues that Plaintiff's "failure to timely contact the EEO office is deadly to all of
her claims, with the possible exception of the verification letter written by Dr. Cole in January
2013."  Mot. to Dismiss 9-10.

Plaintiff responds that at least two of her disparate treatment claims—claims based on
these discrete discriminatory acts—are not time-barred.  Resp. 9.  She argues that her claim
regarding the 2013 Letter is not time-barred because it was filed with the EEO office within the
forty-five day window required by Title VII.  Resp. 9.  She further asserts that her disparate
treatment claim based on the 2010 Email from Dr. Cole to Dr. Imuro is not time-barred because
she did not find out about the email until early 2013, thereby placing it within the forty-five day
window.  Resp. 9.

Under Title VII, "[d]isparate-treatment discrimination addresses employment actions that
treat an employee worse than others based on the employee's race, color, religion, sex, or
national origin."  *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006).  Before a federal
employee can bring a Title VII disparate treatment claim in federal district court, the employee
must first exhaust available administrative remedies.  *Id.* at 788 ("As a precondition to seeking
this judicial relief, however, complaining [federal] employees must exhaust their administrative
remedies . . . ."); *see also Yee v. Baldwin-Price*, 325 F. App'x 375, 378 (5th Cir. 2009)

("Exhaustion of available remedies is required 'before a federal employee may bring an employment-discrimination suit in federal court . . . .'" (quoting *Hampton v. IRS,* 913 F.2d 180, 182 (5th Cir. 1990))). "As an initial step in the exhaustion process," federal employees seeking to bring claims of discrimination "must initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory." *Yee*, 325 F. App'x at 378 (alteration in original) (quoting 29 C.F.R. § 1614.105(a)(1)); *see also Mineta*, 448 F.3d at 786 n.2 ("A federal employee who is alleging unlawful discrimination . . . must contact a counselor within 45 calendar days of the alleged discriminatory action, or, in the case of a personnel action, within 45 calendar days of the effective date of the action before they may file a formal administrative charge with their agency's Equal Opportunity Office.").

The forty-five day period for notifying the EEO Counselor begins to run when the discriminatory event occurs, *Mineta*, 448 F.3d at 786 n.2, not when the complainant first discovers that a past event was motivated by discrimination. *Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992) (explaining that "[t]o allow plaintiffs to raise employment discrimination claims whenever they begin to suspect that their employers had illicit motives would effectively eviscerate the time limits prescribed for filing such complaints"). Failure to notify the EEO Counselor within the statutory time period may bar the claim. *Henderson v. U.S. Veterans Admin.*, 790 F.2d 436, 439-40 (5th Cir. 1986); *Mineta*, 448 F.3d at 786 n.11 ("Generally, discrimination claims alleging conduct that occurred more than 45 days before the initiation of administrative action (contacting an EEO counselor) are time barred in a subsequent action in federal court.").

"[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

101, 113 (2002); *see Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 861 (S.D. Tex. 2010).  Rather,

"[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."

*Morgan*, 536 U.S. at 113; *see Lopez*, 684 F. Supp. 2d at 861.  However, past discrete

discriminatory acts that fall outside the limitations period can be used "as background evidence

in support of a timely claim" so long as the timely claim involves "acts [that] are independently

discriminatory."  *Morgan*, 536 U.S. at 113; *see also Vann v. Mattress Firm, Inc.*, No. 15-20082,

2015 WL 5675039, at *3 (5th Cir. Sept. 28, 2015) (explaining that the plaintiff could use her

time-barred claims as evidence supporting a timely claim).

    The time bar is not jurisdictional[5] and is subject to waiver, estoppel, and equitable tolling.

*Morgan*, 536 U.S. at 113 (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982));

*Henderson*, 790 F.2d at 440; *Rice*, 966 F.2d at 906.  "Equitable tolling is to be applied

sparingly."  *McCollum v. Puckett Mach. Co.*, No. 15-60166, 2015 WL 5817650, at *3 (5th Cir.

Oct. 6, 2015) (internal quotation marks omitted) (quoting *Granger v. Aaron's, Inc.*, 636 F.3d

708, 712 (5th Cir. 2011)); *see Morgan*, 536 U.S. at 113.  Generally, under Title VII, there are

three "possible bases" for equitable tolling: "(1) the pendency of a suit between the same parties

in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the

defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about

the nature of her rights," but this list is not exhaustive.  *Granger*, 636 F.3d at 712.  The court is

less willing to apply equitable tolling "where the claimant failed to exercise due diligence in

preserving his legal rights."  *Wilson v. Sec'y, Dep't of Veterans Affairs ex. rel. Veterans Canteen

Servs.*, 65 F.3d 402, 404 (5th Cir. 1995).

---

[5] While there is some disagreement in the courts regarding whether the exhaustion requirement itself is jurisdictional, *see Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006), the United States Supreme Court has clearly stated that the requirement of notification to the EEO Counselor within forty-five days is not jurisdictional. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982)); *Henderson v. U.S. Veterans Admin.*, 790 F.2d 436, 440 (5th Cir. 1986).

In this case, all of the discriminatory acts that Plaintiff has alleged, with the exception of the 2013 Letter, occurred more than forty-five days prior to her contact with the EEO office, and are therefore time-barred.

Plaintiff's first claim of discrimination involves being placed on Program Level Remediation on October 20, 2009. Compl. ¶ 12. Further, Plaintiff alleges that she was placed on probation two more times on April 14, 2010, and August 10, 2011. Compl. ¶¶ 23, 37. Plaintiff's second claim of discrimination involves her allegations that Dr. Cole denied her a letter of recommendation in February 2010. Compl. ¶¶ 16-17. Plaintiff's third claim of discrimination involves Dr. Cole's 2010 Email, asking another doctor to lower Plaintiff's grade in "medical knowledge," in April 2010. Compl. ¶¶ 21-22. Plaintiff's fifth claim of discrimination involves her resignation on January 10, 2012, at which time she was told that she would receive two years credit for her work at WBAMC. Compl. ¶ 39.

Plaintiff did not contact the EEO office until February 26, 2013. EEO Compl. 2. This contact occurred more than one year after the most recent of these incidents, including her resignation from WBAMC in January 2012. *See* Compl. ¶¶ 12-39; EEO Compl. 2. In fact, the EEO contact occurred over three years after the first alleged incident in October 2009. *See* Compl. ¶ 12; EEO Compl. 2. Because the EEOC contact occurred more than forty-five days after these allegedly discriminatory acts, each of these claims of disparate treatment is time-barred. *See Mineta*, 448 F.3d at 786 n.11.

Plaintiff alleges that she did not learn of the 2010 Email until early 2013, and that, due to this late discovery, her claim of discriminatory treatment based on this email is not time-barred. Resp. 9. Plaintiff argues that "[t]he limitation period starts running once a plaintiff knows or

should have known of the unlawful employment action."  Resp. 9 (citing *Phillips v. Leggett &*
*Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011)).

First, to the extent that Plaintiff argues that her claim is not time-barred because she did
not learn of the 2010 Email until early 2013, her claim fails.  "[T]he limitations period starts
running on the date the discriminatory act occurs," not when a plaintiff "apprehends that
unpleasant events in the past were caused by illegal discrimination . . . ."  *Merrill v. S. Methodist*
*Univ.*, 806 F.2d 600, 605 (5th Cir. 1986) (emphasis omitted) (citing *Delaware State Coll. v.*
*Ricks*, 449 U.S. 250, 258 (1980)).

In addition, Plaintiff had the duty to diligently investigate the motivation behind the
alleged adverse employment actions at the time that such actions occurred.  *See Rice*, 966 F.2d at
907 ("The requirement of diligent inquiry imposes an affirmative duty on the potential plaintiff
to proceed with a reasonable investigation in response to an adverse [employment] event.").
Thus, to the extent Plaintiff argues as much, Plaintiff's late apprehension of the email would not
restart the forty-five day period for past adverse employment actions.  *Id.* at 906-07.  The EEO
contact did not occur until nearly three years after the time of the 2010 Email, and the claim is
time-barred.

Second, assuming that Plaintiff timely filed an EEO complaint based on the 2010 Email,
any claim based on the email still fails because it is not an adverse employment action.  "To
establish a discrimination claim under Title VII [], a plaintiff must prove that he or she was
subject to an 'adverse employment action'—a judicially-coined term referring to an employment
decision that affects the terms and conditions of employment."  *Thompson v. City of Waco*, 764
F.3d 500, 503 (5th Cir. 2014) (citing *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 281–82 (5th Cir.
2004)).  Under Title VII, an employment action will not be considered adverse unless the action

affects the complainant's "job duties, compensation, or benefits."  *Id.*  The Fifth Circuit has held that "adverse employment actions consist of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating."  *Id.* (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007)).

In the 2010 Email, Dr. Cole asks Dr. Imuro to lower Plaintiff's grade; Dr. Imuro responds, declining to change Plaintiff's grade.  Compl. ¶ 22.  The 2010 Email is not an "adverse employment action" because it did not affect Plaintiff's "job duties, compensation, or benefits." *See Thompson*, 764 F.3d at 503.  Because Dr. Imuro refused to change Plaintiff's grade in response to the email, the email did not impact Plaintiff's employment in any way, and cannot be considered an "adverse employment action" under Title VII.  *See id.*; *Mitchell v. Snow*, 326 F. App'x 852, 855 (5th Cir. 2009) (holding that a performance review was not an adverse employment action).  For these reasons, to the extent Plaintiff alleges that the 2010 Email is a discriminatory act involving disparate treatment, the claim is not permitted.  *See Thompson*, 764 F.3d at 503.

Thus the Court finds that all discrete discriminatory acts that Plaintiff alleges occurred during her term of employment at WBAMC, up to and including her resignation from WBAMC, are time-barred.  *See Mineta*, 448 F.3d at 786 n.11.

### b.    2013 Letter

Plaintiff's final claim of discrimination involves the 2013 Letter, in which Dr. Cole rated Plaintiff as marginal for sixteen months of residency, despite the fact that the 2012 Memorandum stated that Plaintiff would be rated as marginal for only one year.  Compl. ¶¶ 40, 42.  This claim is timely because Plaintiff contacted the EEO office on February 26, 2013, less than forty-five

days after the letter was written on January 20, 2013.  *See* EEO Compl. 2; *Mineta*, 448 F.3d at 786 n.11; *Yee*, 325 F. App'x at 378.

Although any discrimination based on the 2013 Letter would not be time-barred, any claim based upon the 2013 Letter fails because the letter does not constitute an adverse employment action.  First, negative references and performance reviews, such as the 2013 Letter, are not adverse employment actions, and cannot form the basis of a disparate treatment claim. *See Moini v. Univ. of Texas at Austin*, 832 F. Supp. 2d 710, 728 (W.D. Tex. 2011) (stating that "negative references do not constitute adverse employment actions within the meaning of a Title VII discrimination claim"); *Mitchell*, 326 F. App'x at 855 (holding that a performance review was not an adverse employment action).

Moreover, the 2013 Letter—which provides a summary of Plaintiff's performance at WBAMC—had no effect on Plaintiff's compensation, duties, or benefits; indeed it could not, because Dr. Cole wrote the letter over a year after Plaintiff's resignation.  Compl. ¶¶ 39, 42. Further, even had Dr. Cole written the 2013 Letter during Plaintiff's term of employment at WBAMC, it would not have affected Plaintiff's compensation, duties, or benefits because it would not have terminated or changed Plaintiff's employment in any way; rather, it only provided a statement about the quality of Plaintiff's work at WBAMC.  *See Thompson*, 764 F.3d at 503.  *See also Mitchell*, 326 F. App'x at 855; *Moini,* 832 F. Supp. 2d at 728.  Thus, the 2013 Letter is not an adverse employment action, and the claim fails.  *See Mitchell*, 326 F. App'x at 855; *Moini,* 832 F. Supp. 2d at 728.

Although Plaintiff need not plead "specific facts in support of each element of [P]laintiff's *prima facie* case," *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 438 (5th Cir. 2004), she must allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550

13

U.S. at 570.  Even accepting all of Plaintiff's factual allegations as true, as the Court must, *see Calhoun*, 312 F.3d at 733, the Court finds that Plaintiff has failed to state a plausible claim for relief based upon the 2013 Letter because Plaintiff has failed to demonstrate any adverse employment action in conjunction with the 2013 Letter.  *See Thompson*, 764 F.3d at 503.

Indeed, Plaintiff has failed to allege a single adverse employment action that is not time-barred; thus, Plaintiff has failed to state a plausible claim for relief for disparate treatment under Title VII.  *See Pryor v. Wolfe*, 196 F. App'x 260, 263 (5th Cir. 2006) (holding that the plaintiff failed to state a claim under Title VII where Plaintiff failed to establish that the defendant committed a single adverse employment action); *cf. Thompson*, 764 F.3d at 505-06 (finding that the plaintiff sufficiently alleged an adverse employment action, so as to survive a motion to dismiss, where the plaintiff alleged "more than a mere loss of some job responsibilities").  Accordingly, the Court dismisses Plaintiff's disparate treatment claims.

### c.    Equitable tolling

Plaintiff does not allege or argue that equitable tolling should apply in her case.  Nevertheless, out of an abundance of caution, the Court considers this issue.

"Generally, in the Title VII context, there are three bases for equitable tolling: (1) a pending action between parties in the wrong forum; (2) the plaintiff's unawareness of the facts supporting his claim because defendant intentionally concealed them; and (3) the EEOC's misleading the plaintiff about his rights," although this list is not exhaustive.  *Phillips*, 658 F.3d at 457.  In *Pacheco v. Rice*, the Fifth Circuit held that the plaintiff was not eligible for equitable tolling when, three years after he resigned under threat of termination "he allegedly discovered that a similarly situated Anglo employee" was subjected to different treatment when facing the same disciplinary charges.  966 F.2d at 905, 907 (stating that the doctrine of equitable tolling

"does not permit plaintiffs to suspend the time for filing discrimination complaints indefinitely when they discover instances of disparate treatment of other employees months or years after their discharge"). The court held that the plaintiff had the duty to look into the circumstances surrounding his forced resignation, explaining that, "[i]f Pacheco suspected that he was being singled out because of his race, he could easily have complained or sought information" regarding his disciplinary proceedings. *Id.* at 907.

In this case, Plaintiff has not alleged facts that could give rise to equitable tolling, waiver, or estoppel. *See generally* Compl. Nor did Plaintiff argue, in her Response to the Motion to Dismiss, that equitable tolling, waiver, or estoppel apply to her situation. *See generally* Resp.

Further, to the extent that Plaintiff could be seen to present a claim for equitable tolling when she asserts that she "was unaware and reasonably would not have known" about the 2010 Email from Dr. Cole to Dr. Imuro, her claim fails because she does not meet the conditions for equitable tolling. *See* Resp. 9. Plaintiff's "unawareness of the facts supporting [her] claim" does not entitle her to equitable tolling because Plaintiff has not alleged that WBAMC or Dr. Cole intentionally concealed these facts from her. *Id.* In addition, Plaintiff had a duty to look into the facts surrounding her case when she suspected that she was being treated unfavorably due to her sex and national origin. Plaintiff's allegations show that she was suspicious that she was being discriminated against during her employment or soon after her resignation, yet Plaintiff took no steps to further investigate this until she contacted the EEO office over a year after her resignation. Compl. ¶¶ 10-39. Because Plaintiff "failed to exercise due diligence in preserving [her] legal rights," the Court finds no reason to apply equitable tolling in this case. *See Wilson*, 65 F.3d at 404.

2.        **Hostile work environment**

Plaintiff also alleges that she was subjected to a hostile work environment due to her national origin and sex during the time that she worked at WBAMC.  *See* Compl. ¶¶ 32, 48. Plaintiff states that, "[d]ue to the hostile environment created by Dr. Cole, Plaintiff became so distraught and affected that she sought medical treatment for anxiety and depression."  Compl. ¶ 32.  Although Plaintiff is not clear about which acts contributed to the alleged hostile work environment, she seems to claim that all of the discrete acts of discrimination that Dr. Cole committed—placing Plaintiff on probation, denying Plaintiff a letter of recommendation, sending the 2010 Email asking Dr. Imuro to lower Plaintiff's grade, commenting that Plaintiff had a learning disability, and commenting about Plaintiff's English proficiency and accent—together created a hostile work environment.  *See generally* Compl.

Defendant fails to address Plaintiff's hostile work environment claim specifically in the Motion to Dismiss, but asserts generally that Plaintiff's entire Complaint should be dismissed because Plaintiff failed to exhaust her administrative remedies.  Mot. to Dismiss 1.

In the Response, Plaintiff states that her claims of discrimination "are based on theories of disparate treatment and hostile work environment," and notes that "Defendant concedes in its motion that at least one of the alleged employment actions occurred within the 45 day window." Resp. 8.  Plaintiff then states that, "Defendant's motion . . . is silent as to plaintiff's assertion of a hostile work environment claim and does not even address the theory of hostile work environment," and concludes that, "[a]s such . . . the Court should not dismiss Plaintiff's claims of discrimination and should allow discovery to proceed as to both her claims of discrimination for disparate treatment and hostile work environment."  Resp. 8.

In the Reply, Defendant again asserts that Plaintiff's entire Complaint should be dismissed, stating that the Complaint is subject to dismissal whether it is based on discrete acts or hostile work environment.  Reply 2.

"A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Morgan*, 536 U.S. at 116).  In deciding if a valid hostile work environment claim exists, the court should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 (5th Cir. 2013); *see Morgan*, 536 U.S. at 116.

"A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117 (citing 42 U.S.C. § 2000e–5(e)(1)).  To exhaust a claim of hostile work environment a federal employee complaining about a hostile work environment must bring that claim to an EEO Counselor with forty-five days. *Austin v. Potter*, 358 F. App'x 602, 605 (5th Cir. 2010) (quoting 29 C.F.R. § 1614.105(a)(1)).  The filing of a hostile work environment claim is timely "so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 105, 117  ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."); *see also Stewart*, 586 F.3d at 328 ("[A] court may consider the entire scope of the hostile work environment claim, including behavior alleged outside the

[statutory time period], so long as any act contributing to that hostile environment takes place within the statutory time period." (internal quotation marks omitted)). However, acts that occur after the term of employment has ended cannot support a claim for hostile work environment. *Walker v. Mississippi Delta Comm'n on Mental Health Illness and Mental Retardation*, No. 4:11CV044-SA-JMV, 2012 WL 5304755, at *8 (N.D. Miss. Oct. 25, 2012) ("Post-employment acts simply cannot provide the necessary support for a claim based on the environment the employee was subjected to in the course of her employment."); *see also Buckhanon v. Huff & Assoc. Constr. Co., Inc.,* 506 F. Supp. 2d 958, 968 (M.D. Ala. 2007) (finding that discriminatory incidents occurring post-employment were not sufficient to defeat summary judgment and stating that "[a] hostile work environment claim requires that the employee *be subjected to* the environment" (emphasis in original)).

Plaintiff's argument seems to be that the Court can consider every discriminatory act alleged to have occurred during her employment under the theory of hostile work environment, simply because one act—the writing of the 2013 Letter—took place within the forty-five day EEO limitations period. *See* Resp. 8. Although Plaintiff did contact the EEO office within forty-five days of Dr. Cole's writing the 2013 Letter, Dr. Cole did not write the 2013 Letter during Plaintiff's employment. *See* Compl. ¶¶ 39, 42. Plaintiff resigned on January 10, 2012, and Dr. Cole did not write the 2013 Letter until January 20, 2013, over a year after Plaintiff's resignation from WBAMC. *See* Compl. ¶¶ 39, 42. Thus, the 2013 Letter cannot be seen as "contributing to that hostile [work] environment" and cannot form the basis of a timely hostile work environment claim when Plaintiff was no longer working in the allegedly hostile environment. *See Morgan*, 536 U.S. at 105; *Walker*, 2012 WL 5304755, at *8; *Buckhanon,* 506 F. Supp. 2d at 968.

When Plaintiff resigned on January 10, 2012, any alleged hostile work environment effectively ended.  Because hostile work environment claims must be brought to the EEO Counselor within forty-five days of the alleged unlawful employment practice, *see Austin*, 358 F. App'x at 605, Plaintiff would have had to file a hostile work environment claim within forty-five days of January 10, 2012, the date of her resignation, to be timely.  *See* Compl. ¶ 39.  Because Plaintiff did not contact the EEO counselor until February 26, 2013, over a year after her employment with WBAMC ended, her hostile work environment claim is time-barred.  *See Austin*, 358 F. App'x at 605 (finding plaintiff's claims of hostile work environment and retaliation time-barred where she did not contact the EEO Counselor within forty-five days of her termination); *see also Walker*, 2012 WL 5304755, at *8 (holding that post-employment acts cannot form the basis of a hostile work environment claim).[6]  Accordingly, the Court dismisses Plaintiff's hostile work environment claim.

### 3.    Common law fraud

Defendant moves to dismiss Plaintiff's common law fraud claim, asserting that the claim is preempted by federal law and barred by sovereign immunity.  Mot. to Dismiss 11-13.  In her Response, Plaintiff states that she "does not oppose Defendant's motion to dismiss her claim for common law fraud."  Resp. 1, n.1.  Accordingly, the Court dismisses Plaintiff's common law fraud claim.

---

[6] Plaintiff cites two cases where courts denied motions to dismiss that alleged failure to timely notify the appropriate administrative authority regarding a hostile work environment claim.  *See* Resp. 8-9 (citing *Konate v. Inter-Con Sec. Sys. Inc.*, No. CIV.A. 14-1636, 2014 WL 6339129, at *3 (E.D. La. Nov. 10, 2014); *Numa v. Cannizzaro*, No. CIV.A. 13-515, 2014 WL 1329829, at *1 (E.D. La. Mar. 31, 2014)).  However, in both cases the plaintiff's termination occurred within the limitations period; thus, these cases are inapposite to this case, where Plaintiff's resignation occurred over a year before Plaintiff contacted the EEO counselor, well outside the forty-five day period to contact the EEO counselor.  *See Konate*, 2014 WL 6339129, at *3; *Numa*, 2014 WL 1329829, at *1; Resp. 3, 5.

C.      **Leave to Amend**

In her Response, Plaintiff argues that her claims are not subject to dismissal, but, in the
alternative, requests leave to amend her complaint.  Resp. 12.  In response, Defendant argues that
Plaintiff should be denied leave to amend.  Reply 10.  Defendant argues that Plaintiff is not
eligible for an amendment as of right under Rule 15(a)(1) because more than twenty-one days
have passed since Plaintiff filed the Complaint.  Reply 10.  Defendant also argues the Court
should not grant Plaintiff leave to amend under Rule 15(a)(2) because amendment would be
futile, and because Plaintiff has failed to comply with the procedural requirements for filing an
amended complaint.  Reply 10.

When a court dismisses one or more of a plaintiff's claims pursuant to Rule 12(b)(6), the
court should generally give the plaintiff an opportunity to amend the complaint.  *See Hart v.
Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000).  However, "a district court may refuse leave
to amend if the filing of the amended complaint would be futile, i.e., 'if the complaint as
amended would be subject to dismissal.'"  *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014)
(quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009)).  "[A] court need
not grant leave to amend when the filing would be futile because the proposed claims are time-
barred."  *Newby v. Enron Corp.*, 542 F.3d 463, 469 (5th Cir. 2008); *see also In re Enron Corp.
Sec.*, 465 F. Supp. 2d 687, 711 (S.D. Tex. 2006) ("Where the proposed new claims are time-
barred, allowing amendment is futile.").

The Court denies Plaintiff leave to amend.  Plaintiff's claims of disparate treatment prior
to 2013 and hostile work environment claim are time-barred; therefore, amendment is futile.  *See
Newby*, 542 F.3d at 469.  Amendment to Plaintiff's claim of disparate treatment regarding the
2013 Letter is also futile.  Plaintiff cannot state a plausible claim for relief even after amendment

because the 2013 Letter did not affect Plaintiff's "job duties, compensation, or benefits," and cannot constitute an adverse employment action. *See Thompson*, 764 F.3d at 503. Moreover, the Court has found that equitable tolling would not be appropriate in this case. Because amendment is futile for all of Plaintiff's claims, the Court denies Plaintiff leave to amend. *See Varela*, 773 F.3d at 707.[7]

## III.    CONCLUSION

For the foregoing reasons, the Court orders the following relief:

**IT IS ORDERED** that Defendant's Motion to Dismiss, ECF No. 9, is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's request for leave to amend the Complaint is **DENIED**.

The Clerk shall close the case.

**SO ORDERED**.

**SIGNED this 13th day of November, 2015.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

---

[7] In asserting that Plaintiff's claims are not time-barred, Plaintiff also argues that, even if "the factual allegations that occurred outside the 45 day time period are not independently actionable," the Court may consider past claims as "background evidence in support of [the] timely claim." Resp. 1. Defendant argues that Plaintiff cannot use time-barred claims as background evidence when Plaintiff "has not alleged any discrete employment actions or any hostile employment activity to have occurred within 45 days of her contacting the EEO Counselor." Reply 7. Because no claims remain and the Court has denied leave to amend, there are no claims for which Plaintiff would need to provide background evidence.